**RICHARDSON GREENSHIELDS
SECURITIES, INC.,
Plaintiff-Appellee,**

v.

**Mui-Hin LAU, Ho Sih Fong, Kau-Ying
Lau, Ying Lup Lau, and Wai Yau
Chi, Defendants-Appellants.**

**No. 944, Docket 87–7057.**

United States Court of Appeals,
Second Circuit.

Argued March 6, 1987.

Decided July 30, 1987.

Michael S. Devorkin, John Doar Law Offices, New York City (Michael Q. Carey, Julia S. Robbins, Carey & Deinoff, New York City, of counsel), for defendants-appellants.

John Linsenmeyer (Peter G. McDonough, Morgan, Lewis & Bockius, New York City, of counsel), for plaintiff-appellee.

Before OAKES and WINTER, Circuit Judges, and METZNER,* Senior District Judge.

WINTER, Circuit Judge:

Defendants appeal from Judge Kram's denial of their motion for leave to file an amended answer asserting counterclaims against plaintiff and third-party claims against four of plaintiff's former employees. The denial of that motion to amend a pleading is not appealable in the circumstances of this case. We treat the attempted appeal as a motion for leave to file a petition for a writ of mandamus, however, and grant the motion if Judge Kram refuses on remand to permit the amendment of the answer.

The issue before us concerns the practice of some district judges to require parties to attend a conference with the court before filing a motion. We do not disapprove of this practice where the required conference is timely arranged by the district judge. In the present case, however, the failure to afford a timely conference had the effect of preventing a party from filing a motion, a power district courts do not have.

## BACKGROUND

This is a diversity action brought by Richardson Greenshields Securities, Inc. ("Richardson") against five members of the Lau family ("the Laus").[1] Richardson is a commodity futures commission merchant that traded commodities accounts opened in the names of each of the Laus in December 1982.[2] Richardson liquidated the accounts in July 1984 following the Laus' failure to pay $167,212.48 in deficit balances that had become due.

This collection action was brought on August 27, 1984. The Laus filed an answer on April 15, 1985, denying, *inter alia*, that any of them except defendant Ying Lup Lau had ever opened an account with Richardson. The answer contained no counterclaims or third-party claims. The parties thereafter engaged in discovery.

Judge Kram conducted a pre-trial conference on June 13, 1986, at which she set a trial date of January 26, 1987. At the conference, counsel for the Laus indicated his desire to file a motion for leave to file an amended answer asserting counterclaims. Judge Kram responded that she would consider such a motion only after a pre-motion conference. This response was pursuant to her rule of practice that "[a]ny party wishing to make a motion should arrange for a pre-motion conference prior to the preparation and submission of any papers."

On June 25, 1986, counsel for the Laus wrote to Judge Kram requesting an immediate conference "to discuss whether the Court will permit Defendants to file a counterclaim in the pending matter." The hand-delivered letter urged that the confer-

---

* The Honorable Charles M. Metzner, Senior United States District Judge for the Southern District of New York, sitting by designation.

1. Mui-Hin Lau and Ho Sih Fong are husband and wife. Kau-Ying Lau is Mui-Hin Lau's sister. Ying Lup Lau (also known as Michael Lau) is the son of Mui-Hin Lau and the husband of Wai Yau Chi. Mui-Hin Lau and Ho Sih Fong are citizens of Hong Kong; Kau-Ying Lau, Ying Lup Lau, and Wai Yau Chi are citizens of Canada.

2. Four commodities accounts were opened with Richardson. One was in the name of Mui-Hin Lau, one in the name of Ho Sih Fong, one in the name of Kau-Ying Lau, and one in the joint names of Ying Lup Lau and Wai Yau Chi.

ence be scheduled for June 27 "or as soon thereafter as is convenient for the Court" because "the statute of limitations for filing certain counterclaims may expire before July 4, 1986." Judge Kram's chambers subsequently informed counsel that no conference could be scheduled prior to July 4 but did not give permission to file the motion for leave to file an amended answer.

In an attempt to prevent the statute of limitations from running on their claims against Richardson and simultaneously to avoid flouting Judge Kram's request of a pre-motion conference, the Laus filed a separate action in the Southern District of New York on July 2, 1986 asserting common law and statutory claims of fraud and conversion against Richardson and four of its former employees. The Laus indicated at the time that the new action was related to the action pending before Judge Kram and that they intended to move to consolidate the cases.

Notwithstanding the Southern District's rule governing the assignment of related cases, and the obvious fact that the July 2 action was related to the present proceeding, Judge Kram appears to have explicitly rejected assignment of the case to her.[3] The case was then assigned to Judge Goettel, who dismissed the complaint on September 19, 1986 "without prejudice to application to Judge Kram to amend answer and assert counterclaims in [the case pending before her] and upon representation of counsel for defendants that they will not assert a statute of limitations defense to any counterclaims that were timely when [the Laus] instituted this suit."

The Laus' counsel sent a letter to Judge Kram later that day again requesting a conference to discuss the motion for leave to amend the answer. Nearly three weeks later, on October 7, Judge Kram's chambers scheduled the requested conference for November 14. When the conference was finally held, Judge Kram indicated that she would not be inclined to grant the motion to amend "after this case has been pending all this time." However, recognizing that a judge "can't deny an attorney the right to make a motion," she permitted the Laus' counsel to file the motion to amend. The motion was filed on November 24.

Judge Kram denied the motion in a memorandum opinion and order entered December 30, 1986 on the ground that the Laus had "offered no justifiable excuse for [the] delay" between the filing of their original answer and the filing of their motion to amend. She rejected the Laus' contention that they lacked sufficient knowledge to plead the counterclaims until the discovery process had been completed, reasoning that "the elements of the claims were within the Laus' sphere of knowledge at the time the Richardson complaint was filed." Judge Kram found further support for the denial of the motion to amend in the Laus' need for an additional two months discovery on the counterclaims.

On January 20, 1987, the district judge denied the Laus' motion to stay the bench trial of this action pending appeal of her ruling on the motion to amend. On February 3, a panel of this court stayed the trial, which was then in progress, pending an expedited appeal of that ruling.

### DISCUSSION

■■■ An order denying a motion to amend a pleading is not appealable as a "final decision" within the meaning of 28 U.S.C. § 1291 (1982). *See D'Ippolito v. Cities Serv. Co.,* 374 F.2d 643, 648 (2d

---

**3.** Local Rule 15 of the United States District Court for the Southern District of New York provides that a new case that is related to a pending case will be assigned to the judge with the older case. Two cases are considered to be related "if they present common questions of law or fact, or arise from the same source or substantially similar transactions, happenings, events or relationships, or if for any other reason they would entail substantial duplication of effort if assigned to different judges." Judge Goettel stated at the September 19, 1986, hearing on Richardson's motion to dismiss the second action: "I have confirmed with the assignment clerk that when this new case was referred to Judge Kram, she did not accept it as a related case and that she therefore declined to accept it. I do not know why.... It was assigned to me upon Judge Kram not accepting it as a related case."

Cir.1967); *DeNubilo v. United States,* 343 F.2d 455 (2d Cir.1965) (per curiam); *Wolfson v. Blumberg,* 340 F.2d 89 (2d Cir.1965) (per curiam). Neither is such an order immediately appealable under the "collateral order" exception to the final judgment rule identified in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949). *See DeNubilo,* 343 F.2d at 457. An interlocutory order is immediately appealable under *Cohen* only if, *inter alia,* it would "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978). We would not be foreclosed on appeal following a final judgment in this case, however, from reviewing the district court's denial of the motion to amend the answer. *See D'Ippolito,* 374 F.2d at 648–49.

The Laus contend that the particular order at issue here is "effectively unreviewable on appeal from a final judgment" because they might be collaterally estopped from relitigating at a jury trial on their counterclaims any factual issues decided at a prior bench trial on Richardson's claims. It is argued that "[s]uch an estoppel would deprive the Laus of their constitutional right to a jury trial." We believe that this argument does not provide a basis for an interlocutory appeal in the circumstances of this case.

■ We need not consider every conceivable consequence of an interlocutory order in determining whether that order is "effectively unreviewable on appeal from a final judgment." For example, many interlocutory orders may have the incidental effect of precluding a jury determination of particular issues at a subsequent trial.[4] If we were to permit an immediate appeal whenever such a possibility existed, we would violate our own instruction that "*Co-*

hen must be kept within narrow bounds, lest this exception swallow the salutory 'final judgment' rule." *Weight Watchers v. Weight Watchers Int'l, Inc.,* 455 F.2d 770, 773 (2d Cir.1972) (citations omitted); *see also United States Tour Operators Ass'n v. Trans World Airlines, Inc.,* 556 F.2d 126, 128 (2d Cir.1977) ("Attempts to come within the scope of the *Cohen* doctrine have been legion, but we have not been receptive to an expansive reading of this exception to the final judgment rule."); *UAW v. National Caucus of Labor Comms.,* 525 F.2d 323, 325 (2d Cir.1975) ("*Cohen* may not be abused by indiscriminate extension").

■ We are particularly reluctant to adopt the proposed expansion of *Cohen* in the circumstances of this case, where the Laus' assertion of their right to a jury trial appears to have been primarily designed to create appellate jurisdiction. The Laus passed up one opportunity for a jury determination of such issues by failing to make a timely demand for a jury trial on Richardson's claims. *See* Fed.R.Civ.P. 38(b), (d). Furthermore, after the denial of their motion to amend, the Laus did not attempt to obtain a jury trial on Richardson's claims pursuant to Fed.R.Civ.P. 39(b), which permits a court to order a jury trial despite the parties' failure to make a timely jury demand. Indeed, they made no mention of their desire for a jury trial on the common issues until January 14, 1987, when they asked Judge Kram to stay the bench trial on Richardson's claims pending this appeal. The Laus' belated interest in their seventh amendment rights thus seems motivated principally by a desire to obtain immediate review of an interlocutory order. Accordingly, we conclude that the Laus' appeal from Judge Kram's denial of their motion to amend must be dismissed.

---

4. These include a wide range of orders that are generally considered unappealable prior to a final judgment, such as denials of motions to amend the pleadings to add claims triable to a jury, refusals to compel discovery into matters that might provide a basis for such claims, and dismissals of such claims on summary judgment or for failure to state a claim while related claims remain to be tried to the bench. *See*

*Ritter v. Mount St. Mary's College,* 814 F.2d 986 (4th Cir.1987) (court's determination of factual issues at bench trial on equitable claims, conducted after erroneous dismissal of legal claims, precludes relitigation of same issues at jury trial on remanded legal claims). *But see Hussein v. Oshkosh Motor Truck Co.,* 816 F.2d 348 (7th Cir.1987) (relitigation not precluded).

■ However, we may in appropriate circumstances treat an attempted appeal as a request for leave to file a petition for a writ of mandamus. *See Poriss v. Aaacon Auto Transp., Inc.,* 685 F.2d 56, 60 (2d Cir.1982); *Western Geophysical Co. v. Bolt Assocs., Inc.,* 440 F.2d 765 (2d Cir. 1971); *International Prods. Corp. v. Koons,* 325 F.2d 403, 407 (2d Cir.1963). We believe that this is such an appropriate circumstance.

■ We have frequently observed that "[m]andamus is an extraordinary remedy, the 'touchstones' of which are 'usurpation of power, clear abuse of discretion and the presence of an issue of first impression.' " *In re United States,* 680 F.2d 9, 12 (2d Cir.1982) (quoting *American Express Warehousing Ltd. v. Transamerica Ins. Co.,* 380 F.2d 277, 283 (2d Cir.1967)); *see also In re IBM Corp.,* 687 F.2d 591, 599 (2d Cir.1982). An appellate court should not issue mandamus to correct even gross error, *In re Diamond Shamrock Chems. Co.,* 725 F.2d 858, 860 (2d Cir.1984), but should issue the writ when necessary "to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n,* 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943).

■ We believe that the district judge usurped power when she prevented the Laus from filing a motion for leave to amend their answer. Absent extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation, *see In re Martin-Trigona,* 737 F.2d 1254, 1261–62 (2d Cir.1984), or a failure to comply with sanctions imposed for such conduct, *Johl v. Johl,* 788 F.2d 75 (2d Cir.1986) (per curiam), a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure. The actions of the district court effectively prevented the Laus from filing a motion for leave to amend. The refusal to permit a motion to be filed without a prior conference, followed by a failure to hold such a conference until nearly five months after one was first requested, and then by a denial of the motion for having been filed too late, are actions so "at odds with the purpose and intent of [the Federal Rules]," *Padovani v. Bruchhausen,* 293 F.2d 546, 548 (2d Cir.1961), as to warrant mandamus relief.[5]

■ We do not suggest that district judges cannot require a conference prior to the filing of motions as a means of managing litigation assigned to them. This practice may serve the useful purpose of narrowing and resolving conflicts between the parties and preventing the filing of unnecessary papers. Litigants and the courts profit when this occurs. However, a district judge must conduct such conferences promptly upon the request of the moving party. In circumstances where that party indicates its belief that time is of the essence, as in the instant case where a statute of limitations concern was raised, the judge must either conduct a conference immediately or permit the motion to be filed without a conference. When Judge Kram found herself unable to schedule a conference, she should have immediately allowed the Laus to file their motion.

■ We believe it would be inappropriate to remand to Judge Kram to determine whether, treating the motion to amend as having been filed in June, the motion should now be granted. Whether or not she would have had the discretion to deny the motion at that time, such a determination made now would be wholly artificial. The delay caused by the failure to schedule a conference and by the resultant need for this proceeding as a result of the failure to allow the Laus to file their motion has

**5.** It is true that the Laus could have obtained a pre-motion conference with Judge Kram on August 1, some five weeks after they had first requested such a conference. We do not believe that they acted unreasonably by instead filing the second action, however, given their concern that the statute of limitations might run on some of their claims before August 1 and their quite reasonable expectation that the second action would be consolidated with this one. *See Speed Prods. Co. v. Tinnerman Prods., Inc.,* 222 F.2d 61, 68 (2d Cir.1955) (claim pleaded in separate action that is subsequently consolidated with original action may be treated similarly to claim added by amendment to original action).

effectively mooted the principal objection to that motion, namely its timeliness.[6] We believe that the only appropriate course of action at this point is to allow the Laus to amend their complaint and assert their counterclaims. The plaintiffs are of course free to move to dismiss the counterclaim for failure to state a claim or to move for summary judgment. The district court may exercise the usual discretion in controlling discovery concerning the counterclaims in order to bring about an expeditious disposition of this litigation.

Accordingly, we hold that the Laus may file a petition for a writ of mandamus if Judge Kram continues to deny them leave to file their amended answer. We trust that this expression of our views on the matter will obviate any need for a petition or a writ. *See International Prods. Corp.*, 325 F.2d at 407.

---

facts necessary to support those claims. *See, e.g., Middle Atl. Utils.*, 392 F.2d at 385 (plaintiff was aware of facts supporting new claims two years before filing of original complaint); *Green*, 50 F.R.D. at 223 (plaintiff was aware of facts asserted in amended complaint from outset of case); *see generally Howey*, 481 F.2d at 1191 ("the mere fact that the government could have moved at an earlier time to amend does not by itself constitute an adequate basis for denying leave to amend").

The instant case is distinguishable from *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442 (2d Cir.1985) and *Barrows v. Forest Laboratories, Inc.*, 742 F.2d 54 (2d Cir.1984), two cases relied upon by Richardson. The district courts in both *Ansam* and *Barrows* expressly found that the reopening of discovery would cause undue prejudice to the opposing party. No such finding was made by Judge Kram in this case. It appears that the new claims in *Ansam* and *Barrows* required extensive discovery that would have significantly delayed further proceedings. In contrast, the Laus' counterclaims require only limited discovery that need not have delayed the trial. Moreover, the district court in *Barrows* concluded that the motion to amend had to be denied in order to forestall "an imminent danger that plaintiff would seek to force a favorable settlement by abusive use of the discovery process." 742 F.2d at 58 (quoting district court's opinion). No such danger exists in the instant case.

---

**6.** Fed.R.Civ.P. 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires." A motion to amend should be denied only for such reasons as "undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir.1981). Furthermore, "[m]ere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *Id.; see also Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973) (Lumbard, J.) ("we know of no case where delay alone was deemed sufficient grounds to deny a Rule 15(a) motion to amend"). The interval between the filing of the original answer and the attempt to amend is no greater in the present case than in many cases in which amendments to the pleadings have been allowed. *See, e.g., State Teachers Retirement Bd.*, 654 F.2d at 845–46 (amendment allowed after three-year interval); *Howey*, 481 F.2d at 1188–89 (amendment allowed after five-year interval and on second day of trial); *Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 383 (2d Cir.1968) (amendment allowed after three-year interval and notice of trial readiness); *Zeigan v. Blue Cross and Blue Shield*, 607 F.Supp. 1434, 1438 (S.D.N.Y.1985) (amendment allowed after three-year interval); *Green v. Wolf Corp.*, 50 F.R.D. 220, 223 (S.D.N.Y.1970) (amendment allowed after four-year interval). Furthermore, the parties in such cases have been permitted to amend their pleadings to assert new claims long after they acquired the